# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

TED WIARD, as personal representative
of the estates of Amy Wiard and Keri Wiard,
deceased,

        Plaintiff,                         Civil No. 02-1544 WJ/RHS

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiff's Motion for Summary Judgment to Remand to Arbitration, filed April 2, 2003 **(Doc. 18)**, and Defendant's Cross-Motion for Summary Judgment, filed April 21, 2003 **(Doc. 22)**. Having considered the parties' briefs and the applicable law, I find that Plaintiff's motion is well-taken and will be granted, and that Defendant's motion is denied as moot.

### Background

This case arises out of a tragic automobile collision which occurred on July 29, 1996. Ted Wiard's two minor daughters, Amy and Keri, ages 6 and 9, were passengers in a vehicle driven by their grandmother, Rachel Devlin, who negligently attempted to cross a road causing her vehicle to be struck by a Sanco Sanitation truck. Amy, Keri and Rachel Devlin died as a result of the injuries sustained in the collision. At the time of the accident, Defendant State Farm Insurance Company ("State Farm") insured Plaintiff's two vehicles and provided uninsured/underinsured ("UM/UIM") coverage in the amount of $50,000 per person and $100,00 per accident

($50,000/$100,000). Plaintiff was informed by State Farm that Rachel Devlin's vehicle involved in the collision had liability coverage of $100,000/$300,000 and UM/UIM coverage of $100,000/$200,000 and that there were no umbrella policies.[1] State Farm also advised Mr. Wiard that the UM/UIM coverage under Rachel Devlin's policy was not available because UM/UIM motorist coverage "does not apply on the same policy where liability [coverage] is applicable" and that a Class II insured "does not qualify for UM/UIM." Pltff's Ex. 6. In May 1997, Plaintiff settled with State Farm the wrongful deaths of Amy and Keri Wiard for Rachel Devlin's liability limits of $100,000 for each estate. In January 1998, Plaintif settled claims against Sanco Sanitation for $125,000 for each estate, for a total of $225,000 per estate. After the case was settled, Plaintiff discovered that Rachel Devlin and her husband had two other State Farm automobile policies that provided UM/UIM coverage of $50,000/$100,000, which would have amounted to a total coverage under all policies of $300,000 per estate. On June 21, 2002, Plaintiff wrote a letter to State Farm demanding arbitration of the underinsured motorist claims of his daughters' estates, stating that Keri and Amy were Class I insureds under the Devlin policies and demanding the "stacked" policy limits of the UIM coverage under both the Devlin and Wiard policies.[2] In that letter, Plaintiff explained that Amy and Keri resided with him and the Devlins.

---

[1] Defendant disputes Plaintiff's contention that State Farm represented that "Mrs. Devlin had *only one* insurance policy. . . which provided liability coverage. . . . (emphasis added). Pltff's Mem. at 3. Plaintiff's support for this contention is a "Certificate of Coverage" provided by State Farm in response to Plaintiff's request for a "certified copy of Mrs. Devlin's insurance policy and any umbrella policies that might be applicable." Pltff's Exs. 2 & 4. Defendant is correct that Plaintiff's Statement of Fact # 8 mischaracterizes that document as a representation by State Farm that the Devlins had *only one* insurance policy. The Certificate of Coverage simply discloses the liability coverage in effect at the time of the accident for the Devlin's 1994 Toyota Tercel, the car which was involved in the accident.

[2] Stacking refers to "an insured's attempt to recover damages in aggregate under more than one policy or one policy covering more than one vehicle until all damages either are satisfied or the total policy limits are exhausted." See Ponder v. State Farm Mutual Automobile Ins. Co.,

Rachel Devlin had been helping Ted Wiard raise his daughters since his wife passed away two years before the collision. Thus, as Class I insureds under the Devlin policies, the girls were entitled to stack UIM coverages of all their policies. Ex. 15.

The following month, Plaintiff filed a lawsuit for Declaratory Judgment against State Farm in state court seeking to remand the case to arbitration to determine whether Amy and Keri were Class I insureds under the Wiard and Devlin policies and if so, the amount of UIM compensation their estates were entitled to under the policies as well as the amount of prejudgment interest. On July 21, 2002, State Farm advised Plaintiff that it decided to extend full coverage under the Devlin and Wiard policies. Pltff's Ex. 14. On October 23, 2002, State Farm tendered to Plaintiff $75,000 for each of the girl's estates as underinsured motorist benefits, after offsetting the amounts Plaintiff received from State Farm and Sanco.

Plaintiff contends that State Farm owes prejudgment interest on the $150,000 of UIM benefits ($75,000 to each estate) paid to him in October 2002. Plaintiff claims that he is entitled to interest on that amount because State Farm did not disclose the existence of the other two Devlin policies in response to his inquiry after the accident, but rather waited until after his Complaint for Declaratory Judgment was filed.

While State Farm does not dispute Plaintiff's entitlement to the $150,000, it does assert that Ted Wiard is not entitled to any interest on that amount. Defendant contends that it was unaware of the girls' Class I status when it first evaluated the claims in September 1996, and that it first came to know of the girls' dual residency in June 2002 when Wiard wrote to State Farm demanding arbitration of the underinsured motorist claims -- almost six years after the claims were

---

129 N.M. 698, 702 (2000). Generally speaking, Class I insureds may "stack" uninsured motorist coverages, whereas Class II two insureds may not do so. See Lopez v. Foundation Reserve Ins. Co., 98 N.M. 166, 646 P.2d 1230 (1982).

first filed. Defendant also points out that it disclosed the remainder of the Devlin's policies just four months after receiving notice of Plaintiff's assertion that Keri and Amy Ward were Class I insureds under the Devlin's policies.

## Discussion

Plaintiff seeks an Order requiring that the case be remanded to arbitration to decide whether Amy and Keri Wiard are entitled to prejudgment interest on the amount of UIM benefits received under the Wiard and Devlin policies. State Farm requests summary judgment on the remaining claim in Plaintiff's Complaint regarding whether Plaintiff is entitled to prejudgment interest. The question of whether Plaintiff is entitled to prejudgment interest for now must take a back seat to the threshold issue of whether parties have agreed to arbitrate the matter.

*Legal Standard*

Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir.1998). To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. Bausman v. Interstate Brands Corp., 252 F.3d 1111 (10th Cir. 2001)

*Should the case be remanded to arbitration?*

The threshold issue of whether there was an existing agreement requiring arbitration is for the Court to determine. Gonzales v. United Southwest Nat'l Bank, 93 N.M. 522, 523 (1979); Bernalillo County Med. Ctr. Employees' Ass'n v. Cancelosi, 92 N.M. 307, 308 (1978) ("[w]here

4

provision for arbitration is disputed, the court's function is to determine whether there is an agreement to arbitrate"), cited in Campbell v. Millenium Ventures, LLC., 132 N.M. 733, 736 (Ct.App. 2002). The terms of the agreement "define the scope of the jurisdiction, conditions, limitations and restrictions on the matters to be arbitrated." Christmas v. Cimarron Realty Co., 98 N.M. 330, 332 (1982). Therefore, the court's inquiry is whether the parties have agreed to arbitrate the matter under dispute. K.L. House Constr. Co. v. City of Albuquerque, 91 N.M. 492, 494 (1978).

The answer as to whether parties agreed to arbitrate the issue of prejudgment interest lies in the language of the arbitration provision in the insurance policy. The relevant language states:

Two questions must be decided by agreement between insureds and us:[3]

    1. Is the insured legally entitled to collect damages from the owner or driver of the uninsured motor vehicle; and

    2. If so, in what amount?

If there is no agreement, these questions shall be decided by arbitration upon written request of the insured or us.

Pltff's Mem., Ex. 18

State Farm argues that Plaintiff's claim for pre-judgment interest is for an amount that is above and beyond the policy limits, thereby making the issue extra-contractual. State Farm further argues that Plaintiff's claim for interest stems from State Farm's conduct in allegedly withholding information about the Devlin policies rather than from the conduct of "the owner or driver of the uninsured motor vehicle" under the language of the arbitration clause, thus taking the claim for interest outside the scope of the arbitration provision. I am not persuaded by these arguments. As a contractual remedy, arbitration clauses are governed by contract law. Casias et

---

[3] The term "us" in the insurance policy refers to State Farm.

5

al. v. Dairyland Ins. Co., 126 N.M. 772 (Ct.App. 1999).  In construing provisions of a contract, I am required to give words their ordinary meaning, give effect to the main purpose of the instrument, and interpret the contract so as to make it effective and reasonable. From RTC v. Ocotillo W. Joint Venture, 840 F.Supp. 1463, 1482 (D.N.M. 1993).[4]

While the language in the arbitration provision is specific as to "damages from the owner or driver of the uninsured motor vehicle," it clearly envisions damages that the insured will actually receive from the insurer -- after all, this *is* an insurance policy.[5] Moreover, the provision speaks of an insured's entitlement to collect "damages."  Here, the parties are in disagreement on the issue of prejudgment, which is an element of damages.  Swan v. American Family Mutual Ins. Co., 8 P.2d 546, 548 (Colo. App. 2000) ("Prejudgment interest is an element of damages"). Under the provision, matters on which an agreement cannot be reached "shall be decided by arbitration upon written request of the insured. . . ."  On June 21, 2002, Ted Wiard submitted an written demand for arbitration of the matter.  Accordingly, I find that Plaintiff's claim for prejudgment interest remains within the scope of the arbitration provision and shall be arbitrated in accordance with the contract.

State Farm directs the Court's attention to  Swan v. American Family Mutual Ins. Co., 8 P.2d 546, 548 (Colo. App. 2000) and State Farm Mut. Auto Ins. Co. v. Blystra, 86 F.3d 1007

---

[4] The Court makes no finding of ambiguity in the arbitration provision.  However, even if the language was ambiguous, any uncertainties would be construed against State Farm as the drafter. See RTC v. Ocotillo, 840 F.Supp. at 1482; Western Farm Bureau v. Carter,127 N.M. 186, 979 P.2d 231, 232 (1999).

[5] Under Defendant's narrow construction of the provision, it could be argued that a disputed coverage issue is non-arbitrable because the issue concerns the insurer's conduct rather than the tortfeasor's.  This clearly is not what the parties would have agreed to in the arbitration provision.

(10th Cir. 1996), to argue that Plaintiff is not entitled to prejudgment interest. While these cases might be of some use regarding the merits of Plaintiff's claim for prejudgment interest if the issue were litigated before this Court, they have no bearing on the enforceability of the arbitration clause in the insurance policy.

*Defendant's Counter-Motion for Summary Judgment*

Having concluded that this matter must be resolved by arbitration pursuant to the parties' insurance contract, I need not decide the issue of whether Plaintiff is entitled to prejudgment interest.

**THEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment to Remand to Arbitration **(Doc. 18)** is hereby GRANTED in that the remainder of Plaintiff's claims shall be remanded to arbitration, thus disposing of this case in its entirety;

**IT IS FURTHER ORDERED** that Defendant's Cross-Motion for Summary Judgment **(Doc. 22)** is hereby DENIED AS MOOT.

                                                UNITED STATES DISTRICT JUDGE